1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK M. LOWE,                                        No. C 08-005 SI (pr)

          Petitioner,                                **ORDER DENYING PETITION FOR
                                                     WRIT OF HABEAS CORPUS**

     v.

JIMMY WALKER, Warden,

          Respondent.
                                          /

**INTRODUCTION**

          This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C.

§ 2254.  As grounds for habeas relief Mark Lowe alleges, <u>inter</u> <u>alia</u>, that he was not mentally

competent to stand trial.  For the reasons set forth below, the petition is denied.

**BACKGROUND**

          Lowe sexually assaulted four male children.  After a trial on charges arising from these

acts, a Contra Costa Superior Court jury found Lowe guilty of twenty-seven counts of a

performing a lewd act on a child under the age of fourteen (Cal. Pen. Code § 288(a)), twelve

counts of forcibly performing a lewd act on a child under the age of fourteen (<u>id.</u> § 288(b)(1)),

one count of continuous sexual abuse of a child (<u>id.</u> § 288.5), and one count of sodomizing a

child under the age of fourteen (<u>id.</u> § 286(c)(1)).  The trial court sentenced Lowe to a total term

of 585 years in state prison.  Lowe appealed.  The California Court of Appeal for the First

Appellate District affirmed the judgment. (Ans., Ex. 8.)  The California Supreme Court denied

Lowe's petition for review.  (Id., Ex. 10.)  It appears that Lowe did not petition for state habeas relief.

As grounds for federal habeas relief, Lowe alleges that (1) the trial court erred in finding him competent to stand trial, (2) his right to due process was violated by the admission of evidence concerning child sexual abuse accommodation syndrome, (3) his attorney provided ineffective assistance of counsel in failing to object to the admission of expert testimony on child sexual abuse accommodation syndrome, and (4) his Sixth Amendment rights under Cunningham v. California, 549 U.S. 270 (2007) and Apprendi v. New Jersey, 530 U.S. 466 (2000), were violated by the imposition of upper term sentences for two of the convictions.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  "[A] federal

United States District Court
For the Northern District of California

1   habeas court may not issue the writ simply because that court concludes in its independent

2   judgment that the relevant state-court decision applied clearly established federal law

3   erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

4   A federal habeas court making the "unreasonable application" inquiry should ask whether the

5   state court's application of clearly established federal law was "objectively unreasonable." Id.

6   at 409.

7

8                                    **DISCUSSION**

9   **I.    Mental Competence**

10          Lowe claims that  claims that the trial court's finding that he was mentally competent

11  to stand trial was not supported by substantial evidence.  (Pet. at 6.)  The state appellate court

12  rejected Lowe's claim, finding that the expert opinions offered at the competency trial were

13  "based on extended observations of [Lowe], [and were] credible and of solid value," and

14  provided "ample support" for the trial court's determination.  (Ans., Ex. 8 at 9.)

15          The relevant facts are as follows.  The indictment was brought in October 2000, but,

16  owing to Lowe's mental incompetence, criminal proceedings were suspended and Lowe was

17  housed at Napa State Hospital.  After a competency trial in 2005, Lowe was found competent

18  to stand trial.  At Lowe's competency trial, the trial court heard from, among others, defense

19  witnesses Edward Hyman and Myla Young, both psychologists, and Mike Markowitz, an

20  attorney who represented Lowe at his previous competency hearings.  The trial court also

21  heard from prosecution witnesses James Jones, a psychologist at Napa State Hospital, and

22  Larry Wornian, a neuropsychologist.  (Id. at 2, 3.)

23          Hyman examined Lowe from December 2001 to February 2002, in March and April

24  2004, and in April 2005.  At the competency trial, Hyman testified that Lowe, in addition to

25  having a "borderline IQ" and "significant memory impairment," suffered from several

26  serious mental disorders, which "impaired [Lowe's] ability to make judgements, consider

27  alternatives, and anticipate consequences, " and to "misperceive reality."  In sum, Hyman

28

United States District Court
For the Northern District of California

opined that Lowe "could not assist, and would instead interfere, with his defense."  (<u>Id.</u> at 3.)

Young, who had examined Lowe in July 2002, April 2004, and March and April of 2005, determined that Lowe suffered from "major disorders" which resulted in a "gross distortion of reality[,] and illogical, at times psychotic and delusional[,] thinking."  Based on this findings, Young declared that Lowe "could not reasonably or rationally assist counsel with his defense."  (<u>Id.</u> at 3–4.)

Markowitz's opinion was that Lowe's "biggest problem was his single-mindedness, or 'tunnel vision.'"  According to Markowitz, Lowe "had a single 'mantra' about his case:  'Get the kids in court and they will tell the truth.'"  Markowitz, however, admitted on cross-examination that when Lowe was upset with the repeated continuances of his trial, Lowe was "absolutely able . . . to go on at great length about his frustration with [trial counsel]" and to recall "specific matters such as the dates that had been set for trial."  (<u>Id.</u> at 4–5.)

Prosecution witness Jones observed Lowe for two to three hours in the mornings and received staff reports regarding Lowe twice a day during Lowe's second commitment at Napa State Hospital from 2004 to 2005.  Jones testified that though Lowe was often "very rigid" and "inflexible," Lowe had no "severe brain disorder or mental illness" that would "prevent his learning of information or retrieval of information," and was in fact "very fluent" in expressing himself.  In sum, Jones opined that Lowe was competent to stand trial. (<u>Id.</u> at 5.)

Prosecution witness Wornian testified that Hyman's and Young's tests were not "designed to address the question [] whether a person can cooperate with their attorney," and were "a kind of shortcut to spending just a whole bunch of time looking at the person through informed neuropsychological eyes."  Wornian opined that "the day-to-day observations of staff like that in Napa [such as Jones] were entitled to 'equal if not more' weight than test results."  (<u>Id.</u> at 6.)

After hearing such testimony and observing Lowe's demeanor in court, the trial court stated that though Lowe had some "mental deficiencies and mental disorders," it was

United States District Court<br>For the Northern District of California

4

persuaded that those mental problems did not render him incompetent:  "[N]othing allows me to conclude that he is unable to provide counsel with the kind of assistance they need to defend him.  Quite the opposite.  [Lowe] understands what he's being charged with [and he] has a line of defense to it."  (<u>Id.</u> at 8.)

State court competency determinations are entitled to a presumption of correctness.  <u>See</u> <u>Brewer v. Lewis</u>, 989 F.2d 1021, 1027 (9th Cir. 1993).  A federal court may overturn a state court competency finding only if it is not fairly supported by the record.  <u>See id.</u>  The conviction of a defendant while legally incompetent violates due process.  <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 510 (9th Cir. 1994).  Due process precludes a state from presuming that a criminal defendant is competent unless he proves his incompetence by clear and convincing evidence because under that higher standard a defendant may be put to trial (or waive counsel or plead guilty) even though it is more likely than not that he is incompetent.  <u>See</u> <u>Cooper v. Oklahoma</u>, 517 U.S. 348, 354–69 (1996).

Applying these legal principles to the instant matter, the court concludes that Lowe's claim is without merit.  First, Lowe has not overcome the presumption that the state determination of competence was correct.  In his petition, Lowe offers a different interpretation of the evidence presented to the trial court, rather than evidence that overcomes the presumption of correctness that this court must give to trial court's determination.  Second, the trial court's decision is supported by the record.  Mental health professionals who had extensively studied Lowe's mental health testified that Lowe understood the charges against him and was able to assist in his defense, i.e., that he was mentally competent to stand trial, though he may suffer from mental illness.  The trial court found these witnesses credible and the evidence that they gave persuasive.  This court cannot reassess credibility nor reweigh the evidence.  Rather, this court can only look to see whether the trial court's decision was fairly supported by the record.  The court concludes that it was, and therefore that the state determination comports with constitutional requirements.  Accordingly, the court will deny petitioner's claim.

United States District Court
For the Northern District of California

## II.    Admission of Evidence

Lowe claims that the trial court's admission of evidence regarding child sexual abuse accommodation syndrome ("CSAAS") violated his right to due process.[1]  (Pet. at 6.)  Lowe contends that not only is CSAAS "junk science," but it has been omitted from the Diagnostic and Statistic Manual of the American Psychiatric Association and rejected by "the relevant scientific community" as a diagnostic tool.  (Id. at 8.)  Lowe contends that the prejudice caused by the introduction of this "junk science" evidence was not undone by the trial court's cautionary instruction to the jury.  (Id.)  This cautionary instruction, CALJIC No. 10.64, which the trial court gave before the presentation of this evidence and again just before final jury deliberations, stated that the CSAAS evidence was to be used "for the limited purpose of showing, if it does, that an alleged victim[']s reactions, as demonstrated by the evidence, are not inconsistent with [him] having been molested."  (Ans., Ex. 3, Vol. 5 at 1028.) Furthermore, the instruction stated that the CSAAS evidence "must not be considered by you as proof that the alleged victim[']s molestation claim is true," and that the jury was to "presume the defendant innocent."  (Id. at 1027, 1028.)

The state appellate court rejected Lowe's claim that CSAAS was "junk science" and that the courts should reconsider whether admitting CSAAS evidence is appropriate:

> [Lowe] acknowledges that case law supports admission of CSAAS evidence for the limited purpose [of showing, if it does, that an alleged victim's reactions, as demonstrated by the evidence, are not inconsistent with him having been molested] . . . [O]ur Supreme Court [has] indicated that expert testimony on CSAAS is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior, and noted that the great majority of courts approve of the use of such testimony.

(Ans., Ex. 8 at 16) (internal citations and quotation marks removed.)

---

[1] "CSAAS describes various emotional stages, experienced by sexually abused children, that may explain their sometimes piecemeal and contradictory manner of disclosing abuse. Under the CSAAS analysis, inconsistencies in a child's accounts of abuse do not necessarily mean that the child is lying.  The child could be telling different parts of what happened [with] different adults, based on the child's comfort level with each adult or on the developmental immaturity of the child's memory."  Brodit v. Cambra, 350 F.3d 985, 991 (9th Cir. 2003).

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of a fundamentally fair trial guaranteed by due process.  See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).  Only if there are no permissible inferences that the jury may draw from the evidence may its admission violate due process.  See Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

The Ninth Circuit has approved of the California Court of Appeal's holding in People v. Patino, 26 Cal. App. 4th 1737 (1994), that the use of CSAAS evidence in a child abuse case does not necessarily offend a defendant's due process rights.  Brodit, 350 F.3d at 991. "[W]e have held that CSAAS testimony is admissible in federal child-sexual-abuse trials, when the testimony concerns general characteristics of victims and is not used to opine that a specific child is telling the truth."  Id.

Lowe's claim is foreclosed by Brodit.  The Ninth Circuit has upheld the use of CSAAS evidence when, as in the instant case, it is used to show the general characteristics of victims and is not used to opine that a specific child is telling the truth.  Here, the twice-given CALJIC No. 10.64 ensured that the jury understood how to regard the CSAAS testimony in a way consonant with Brodit.  Brodit's constitutional limitations were upheld because CALJIC No. 10.64 explicitly states that CSAAS "evidence is not received and must not be considered by you as proof that an alleged victim's molestation claim is true."  CALJIC No. 10.64 also cautions the jury that "you are to presume the defendant innocent," and that the testimony was admitted for the "limited purpose of showing, if it does, that an alleged victim's reactions, as demonstrated by the evidence, are not inconsistent with him having been molested."  This use of CSAAS evidence comports with constitutional requirements. Accordingly, the court denies Lowe's claim.

**United States District Court**
For the Northern District of California

### III.    Assistance of Counsel

Petitioner claims that trial counsel rendered ineffective assistance when he failed to object to the admission of the CSAAS evidence.  (Pet. at 6.)  The state appellate court apparently did not rule on this claim.

Claims of ineffective assistance of counsel are examined under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  <u>Id.</u> at 687–68.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  <u>Id.</u>  Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  <u>Id.</u> at 695.  It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the <u>Strickland</u> test if the petitioner cannot even establish incompetence under the first prong.  <u>See</u> <u>Siripongs v. Calderon</u>, 133 F.3d 732, 737 (9th Cir. 1998).

Applying these legal principles to the instant matter, the court concludes that Lowe's claim is without merit.  First, Lowe has not shown that trial counsel's performance was deficient.  As discussed above, binding federal legal authority approves of the admission of CSAAS evidence for certain purposes, such as in the instant matter.  Because of this, trial counsel's failure to object cannot have been a deficiency, especially when one considers that such an objection would almost certainly have been overruled by a California court bound by California legal precedent, a precedent that approves of the admission of CSAAS evidence.  Second, Lowe has not demonstrated that trial counsel's allegedly deficient performance resulted in prejudice.  The jury was carefully instructed on how to regard the evidence, and

that not only were they to regard Lowe as innocent after the presentation of the evidence, but also that the prosecution still had to prove guilt beyond a reasonable doubt.  Jurors are presumed to follow the court's instructions.  <u>McNeil v. Middleton</u>, 344 F.3d 988, 999–1000 (9th Cir. 2003).  Lowe has presented nothing to overcome this presumption.  Based on this record, the court denies Lowe's claim.

**IV.   Sentence**

Lowe claims that the trial court violated his Eighth Amendment rights as they are articulated in <u>Cunningham</u>, cited above, when it imposed the upper term for the conviction for the continuous sexual abuse of one victim, Doe II, and for the conviction for sodomy of another victim, Doe IV.  (Pet. at 6.)

The relevant facts are as follows:

> The [trial] court imposed the upper terms based on findings that the single factor in mitigation, [Lowe's] lack of a criminal record (Cal. Rules of Court, rule 4.423(b)(1)), was outweighed by the following factors in aggravation relating to the crimes:  high degree of cruelty, viciousness, and callousness (rule 4.421(a)(1)); particularly vulnerable victims (rule 4.421(a)(3)); planning, sophistication, and professionalism (rule 4.421(a)(8)); and exploitation of a position of trust and confidence (rule 4.421(a)(11)).

(Ans., Ex. 8 at 18.)  The state appellate court rejected Lowe's claim on the basis that any <u>Cunningham</u> error was harmless, stating that "We have no doubt that a jury would have found true multiple aggravating factors supporting the upper term sentences":

> The evidence established that [Lowe] sought out situations where he could meet and befriend the young boys on whom he preyed.  [Lowe] set up his apartment to be what Doe II called a "Fairyland" for his victims, with, as Doe IV recalled, stuffed animals and "candy everywhere."  The apartment was arranged so as to lure children who slept over into [Lowe's] bed, the only bed in the apartment, next to the only TV.  We can confidently conclude that a jury would have found, beyond a reasonable doubt, that the crimes were carried out with considerable planning.

> Doe II, an 11-year-old boy with multiple foster placements, was "obviously and
> indisputably" a particularly vulnerable victim.  [Lowe] — Doe IV's "mentor" and "father" of his best friend — clearly and uncontestably took advantage of a position of trust in Doe IV's life.

(<u>Id.</u> at 18–19.)

United States District Court<br>For the Northern District of California

9

United States District Court
For the Northern District of California

1    <u>Cunningham</u>, on which Lowe bases his claim, is the progeny of an earlier Supreme

2    Court case, <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  In <u>Apprendi</u>, the Supreme Court

3    held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a

4    crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

5    beyond a reasonable doubt."  <u>Id.</u> at 490.  The "statutory maximum" discussed in <u>Apprendi</u> is

6    the maximum sentence a judge could impose based solely on the facts reflected in the jury

7    verdict or admitted by the defendant; in other words, the relevant "statutory maximum" is not

8    the sentence the judge could impose after finding additional facts, but rather the maximum he

9    could impose without any additional findings.  <u>Blakely v. Washington</u>, 542 U. S. 296,

10   303–04 (2004).

11       In <u>Cunningham</u>, the Supreme Court applied the above reasoning to California's

12   determinate sentencing law ("DSL") and found such sentencing scheme violated the Sixth

13   Amendment because the DSL allowed the sentencing court to impose an elevated, or upper,

14   sentence based on aggravating facts that the trial court found by a preponderance of the

15   evidence, rather than facts found by a jury beyond a reasonable doubt.  549 U.S. at 274.

16   According to the Supreme Court, "the middle [prison] term prescribed by California statutes,

17   not the upper term, is the relevant statutory maximum."  <u>Cunningham</u>, 549 U.S. at 288

18   (2007).

19       Under California sentencing scheme, in order to justify the imposition of the upper

20   term and be within constitutional limits, a California sentencing judge must base such a

21   decision on aggravating factors that are reflected in the jury's verdict or admitted by the

22   defendant.  <u>Id.</u> at 288–89.  Circumstances in aggravation are "facts which justify the

23   imposition of the upper prison term."  Cal. Rule of Court 4.405(d).  Under California law, the

24   existence of a single circumstance in aggravation is sufficient to justify the imposition of the

25   upper term.  <u>See</u> <u>People v. Osband</u>, 13 Cal. 4th 622, 728 (Cal. 1996) (citation removed).

26       Lowe's challenged sentences are erroneous under <u>Cunningham</u>.  Lowe's upper term

27   sentence as to Does II and IV is self-evidently beyond the statutory maximum.  Also, the

28

10

factors used by the trial court are not factors admitted by Lowe or reflected in the jury's verdict, viz., found true beyond a reasonable doubt, and therefore require further fact finding by the trial judge.  Therefore, the imposition of the upper term, thereby increasing Lowe's sentence beyond the statutory maximum, based on these factors, is unconstitutional under Cunningham.

However, Blakely and Apprendi sentencing errors are subject to a harmless error analysis.  Washington v. Recuenco, 548 U.S. 212, 221 (2006).  Applying Brecht v. Abrahamson, 507 U.S. 619 (1993), the court must determine whether "the error had a substantial and injurious effect" on Lowe's sentence.  Hoffman v. Arave, 236 F.3d 523, 540 (9th Cir.2001) (internal quotation marks omitted).  Under that standard, the court must grant relief if we are in "grave doubt" as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt.  O'Neal v. McAninch, 513 U.S. 432, 436 (1995).  Grave doubt exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error."  Id. at 435.

Applying these legal principles to the instant matter, the court concludes that the error was harmless.  In sum, sufficient uncontroverted evidence exists in the record to support state appellate court's affirmation of the trial court's application of one of the aggravating factors to Lowe's sentence.  The aggravating circumstance is that the crimes involved planning and sophistication:

> The manner in which the crimes were carried out indicates planning, sophistication and professionalism.  I find that Mr. Lowe arranged to get jobs that placed him near children, hung out in or near playgrounds.  He used his athletics talents to attract these children to him to impress them.  [¶] [He] [s]et up his home so that it was an ideal playground for children, an attractive place where children would want to [] spend[] time, particularly compared with their own home environments.  [¶]  And that his planning occurred over a period of years, as long as ten years that this conduct occurred.

(Ans., Ex. 3, Vol. 7 at 1536–37.)

Evidence was presented at trial that described Lowe's planning:

> Doe II . . . was 11 years old and in the fifth grade when he met [Lowe] playing basketball at the Richmond YMCA.  Doe II was in foster care during the time

11

United States District Court
For the Northern District of California

of his relationship with [Lowe]; over the years, he had more than 20 different foster parents. [Lowe] was a cool guy who said he had played professional football. Doe II started hanging out with [Lowe], who took him out to eat, to the movies, the horse track, and arcades.

Doe II described [Lowe's] apartment as "Fairyland" — a place that had a lot of candy on the table, teddy bears, "everything I wanted as a kid." San Pablo Police Officer David Krastof, who executed a search warrant at the apartment in May 2000, testified that candy and stuffed animals were the first thing you saw when you went inside. Krastof said that there were boxes of popcorn and ice cream cones on top of the microwave, and pictures of [Lowe] on the walls along with photos of sports heroes, political figures, and religious leaders. The only bed and TV in the apartment were in the one bedroom. The bedroom had a stereo system, video games and movies.

Doe II testified that, the third time he slept over at [Lowe's] apartment, [Lowe] rubbed his penis for three or four minutes over his underwear, and then got on top of him and humped him for five or 10 minutes, rubbing their penises together. Doe II tried unsuccessfully to roll over or push [Lowe] away. The outside of Doe II's underpants around his penis was wet after [Lowe] stopped. Doe II said that the same things happened the other 40 or 50 times he slept at defendant's place over the course of a year.

When the prosecutor asked Doe II why he returned to [Lowe's] place after the first incident, Doe II answered, "Because it was fun to do the activities that he had . . . Playing football and playing the sports. We went to the YMCA and [were] being active." Doe II said [Lowe] told him to keep his mouth shut, and he never told anyone what was happening.

(Ans., Ex. 8 at 10–11.)

Evidence was presented at trial that indicated the planning Lowe used in his crime against Doe IV:

Doe IV, born in October 1989, was nine or 10 years old when he met [Lowe]. He testified that Doe III, whom he knew as [Lowe's] son, was his best friend. [Lowe] was "[l]ike a mentor" to Doe IV, a "nice person" who took him to arcades and out to eat. [Lowe's] apartment had stuffed animals, pictures of [Lowe] on the wall, and "[c]andy everywhere."

Doe IV slept over at the apartment once a week for three months during the summer of 1999. On every such occasion, [Lowe] touched Doe IV's penis with his hand, got on top of Doe IV, and humped their penises together. One time defendant put his penis in Doe IV's butt. When [Lowe] would pull Doe IV toward him, Doe IV would try to slide away from him, but defendant forced their contact.

(Id. at 12–13.)

This record supports a finding that Lowe's crimes against Does II and IV involved planning and sophistication. As stated above, Lowe placed himself in positions where he

12

United States District Court
For the Northern District of California

1   could meet children, and arranged his house to be particularly attractive to children, and

2   participated in activities children enjoy.  His placement of the only TV in his bedroom and

3   providing no other sleeping space for the children also indicates that there was planning and

4   sophistication in these crimes.

5       California courts have found that such activities do indicate planning and

6   sophistication under California Rule of Court 4.421(a)(8).  A trial court found that a

7   defendant's crimes were "planned and sophisticated," because the defendant "provided his

8   victims with movies and toys to insure that he remained in [their] good graces" and "to keep

9   them from telling what [was] going on."   The trial court concluded that "the record is clear

10  that [the defendant] took the victim of his continuous abuse to the movies and on trips,

11  encouraged him to sleep over at his house and in his truck, and allowed him to camp out in

12  his backyard.  He also gave candy to the other victim. Thus, the record does support the trial

13  court's underlying point that appellant undertook deliberate efforts to insure that he remained

14  in his victims' good graces and to deter them from reporting the abuse." People v. Burbine,

15  106 Cal. App. 4th 1250, 1262–63 (Cal. Ct. App. 2003).

16      Here, Lowe plied his victims with sweets and other treats, as well as taking them to

17  activities they enjoyed.  Lowe's actions indicate planning and sophistication and are apart

18  from the elements of the crimes themselves.  On such evidence, and in light of the highly

19  deferential AEDPA standard, the court does not have "grave doubts" as to whether a jury

20  would have found the relevant aggravating factor beyond a reasonable doubt, and,

21  accordingly, the court must deny Lowe habeas relief on his sentencing claim.

22                                  **CONCLUSION**

23      For the foregoing reasons, the petition for writ of habeas corpus is DENIED.  The

24  clerk shall close the file.

25      IT IS SO ORDERED.

26  DATED:  6/15/09

27                                  SUSAN ILLSTON
                                    United States District Judge

28